# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| **JODY LEE RABY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:23-cv-00296-MTT-CHW** |
| | : | |
| **ANGELA REAVES-PHAMS, *et al.*,** | : | |
| | : | **Proceedings Under 42 U.S.C. §1983** |
| **Defendants.** | : | **Before the U. S. Magistrate Judge** |
| | : | |

## ORDER AND RECOMMENDATION

This case is currently before the United States Magistrate Judge for screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a).   *Pro se* Plaintiff Jody Lee Raby, a prisoner previously confined at the Riverbend Correctional Facility in Milledgeville, Georgia and now incarcerated at the Wheeler Correctional Facility in Alamo, Georgia, filed a civil rights complaint under 42 U.S.C. § 1983.   ECF No. 1.   Plaintiff also requested to proceed *in forma pauperis* (ECF No. 2) which was granted with the provision that Plaintiff pay a partial initial filing fee (ECF No. 5). Plaintiff has paid that fee.   This case is now ripe for preliminary review.   Upon such a review, Plaintiff's failure-to-protect claims against the Defendants Warden Reaves-Phams and Unit Manager West shall proceed for further factual development.

It is **RECOMMENDED**, however, that Plaintiff's Eighth Amendment failure-to-protect claim against Defendant McCrae be **DISMISSED without prejudice**.   It is further **RECOMMENDED** that any claim against the Defendants for a failure to investigate and

prosecute his assailants be **DISMISSED without prejudice**.   It is also **RECOMMENDED** that all of Plaintiff's claims regarding his confinement in protective custody be **DISMISSED without prejudice**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.     Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).   Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.   Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"   *Hughes*, 350 F.3d at 1160 (citation omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).   The Court may

dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Factual Allegations

Although now confined at Wheeler Correctional Facility, Plaintiff's claims arise from his previous incarceration at Riverbend Correctional Facility in Milledgeville,

3

Georgia (hereinafter, "Riverbend CI").   ECF No. 1 at 5.  Plaintiff states that upon his arrival to Riverbend CI on July 14, 2022, he "advised Medical, Mental Health, and security staff that he is gay and felt vulnerable to assault and sexual harassment" and that "he had been sexually assaulted in open barracks in 2018 and feared being in open barracks".   ECF No. 1-1 at 3.   On July 25, 2022, Defendant West told Plaintiff that he was being moved to an open barracks dorm, and Plaintiff states he "advised Mr. West that he was in fear for his safety in open dorms due to being sexually assaulted and harassed in open dorms in the past".  *Id*. at 3-4.  Plaintiff alleges that Defendant West told him to go to the dorm or he would "go to administrative segregation with a D.R. for failure to follow."  *Id*. at 4. Plaintiff went to the dorm, and he alleges that within a few days of his arrival, "a gang war occurred".  *Id*.  Plaintiff claims that on July 28, 2022, and August 4, 2022, he wrote letters to Defendant Warden Reaves-Phams and Defendant Investigator McCrae requesting a housing change because he was gay and feared "being in that dorm full of gang members who were violent".  *Id*. at 4-5. Plaintiff "received no response to his letters".  *Id*. at 5. Plaintiff avers that on September 12, 2022, he filed a grievance and wrote the Defendant Reaves-Phams "another letter on behalf of himself and 2 others" in which he stated that "he was being harassed and was in fear of being assaulted".  *Id*. at 5. Plaintiff complains that on September 14, 2022, he and another inmate were accused of lying by Defendant West, and Plaintiff was sent back to his dorm while the other inmate was sent to a different open dorm.  *Id*. at 6.   Plaintiff complains that Defendant Reaves-Pham denied the grievance and that there was no investigation into his claims.  *Id*.   Plaintiff states that on

September 18, 2022, his property was stolen by inmate gang members.  *Id*.  The next day, Plaintiff "was badly assaulted by a group of Hispanics, punched and kicked in the face".  *Id*.  Plaintiff avers that he wrote a letter to Defendant Reaves-Phams and Defendant McCrae on September 19, 2022 "explaining that he was robbed and assaulted".  Id. Plaintiff received no response to his letters.  *Id*. Furthermore, Plaintiff states that on September 23, 2022, he and case manager Robinson learned from a family member that "other inmates had been calling [his family] demanding thousands of dollars at a time in which [family] was paying to keep [Plaintiff] safe".  *Id*. at 7.  Plaintiff claims he "was extorted for over $70,000 from December 2022 to April 2023 to keep gang members from assaulting [Plaintiff] any further".  *Id*.

Plaintiff states that on April 13, 2023, he wrote a grievance in which he complained that he had been extorted, assaulted, and "felt as if he was intentionally ignored and kept in danger intentionally".  *Id*.  Plaintiff's grievance was denied as duplicative of a previous grievance and as resolved.  *Id*.  Plaintiff claims he "was again badly assaulted by a gang member" the next day receiving "cuts on face, 2 dark black eyes, bloody nose and a cut on his chin".  Id. at 7-8.  Plaintiff and another gay inmate were removed from the dorm and told a prison official that they needed protective custody.  *Id*. at 8.  The two were then placed in protective custody and taken to "room 102 in J-D".  *Id*. at 8.  Four days later, on April 17, 2023, Defendant West came to Plaintiff's room advising him that his stay in that room was temporary.  Id.  Plaintiff asked for Defendant McCrae, and Defendant West told Plaintiff that McCrae "wasn't there that day".  Id.  Plaintiff states he ran from

Defendant West to other prison officials who found Defendant McRae for him.   Id.
Plaintiff claims that Defendant McRae "placed [Plaintiff] on involuntary protective
custody… because Unit Manager West was trying to move Raby back to an open dorm full
of violent gang members".   *Id*. at 9    Plaintiff further claims that Defendant McCrae told
Plaintiff that he would bring charges against the inmate who assaulted him.   *Id*. On April
27, 2023, Plaintiff submitted a grievance regarding the assault.   *Id*.

Lastly, Plaintiff complains that "[w]hile in involuntary P.C., Raby was restricted to
only a few store items, only allowed a spending limit of $15.00 per week, withheld his
property and hygiene items".   *Id*.   Plaintiff states that in May 2023, he filed a grievance
regarding the conditions in protective custody as well as letters to "the state contract
monitor", Defendant Reaves-Phams, and Defendant McCrae.   *Id*.

III.   Plaintiff's Claims

A.  Failure-to-protect claim

Plaintiff claims that the Defendants failed to protect him from inmate assaults.   Id.
at 11-12.   The United States Supreme Court has recognized that "prison officials have a
duty . . . to protect prisoners from violence at the hands of other prisoners."   *Farmer v.
Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842
F.2d 556, 558 (1st Cir. 1988)).   A prisoner asserting an Eighth Amendment failure-to-
protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials'
deliberate indifference to that risk; and (3) causation.   *Goodman v. Kimbrough*, 718 F.3d
1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a

prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332.

In support of his Eighth Amendment claim, Plaintiff states that he wrote letters to Defendant Reaves-Phams and Defendant McCrae advising them that he was a gay inmate who feared for his safety in the open dorm where he was housed but that he received no responses to these letters. ECF No. 1-1 at 4-6. Plaintiff proffers to the Court that in *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981), the First Circuit Court of Appeals held that "when successive letters are sent to numerous officials in an effort to enlist assistance in protecting them, administrative negligence can rise to the level of deliberate indifference". *Id.* at 5. However, there is no such quote or equivalent language in the *Layne* case. Even if there was, precedent from the First Circuit is not binding on this Court. Instead, this Court is bound by the decisions set forth by the United States Supreme Court, the Eleventh Circuit Court of Appeals, and decisions made by the Fifth Circuit Court of Appeals prior to 1981. A review of precedent from these Courts reveals no opinion in which any of these Courts finds that merely sending letters to which there is no response is enough to demonstrate deliberate indifference. In fact, the Eleventh Circuit has found to the contrary in *Marbury v. Warden*, 936 F.3d 1227, 1233–34 (11th Cir. 2019). In *Marbury*, the Court states that:

> Marbury repeatedly asked to be transferred because he was concerned about a general lack of safety in his cell block. In his letters to Estes and the verbal requests he says he made to Warren, he told them that he had witnessed

7

fifteen inmate-on-inmate stabbings that he attributed to gang affiliations, expressing fear for his own safety. Granting Marbury the resolution of all disputed facts in his favor, our caselaw nevertheless establishes that this evidence was insufficient to establish deliberate indifference to a substantial risk of serious harm.

*Id*.

Indeed, the Eleventh Circuit has held that the mailing of letters to prison officials does not establish the awareness of risk necessary to find deliberate indifference. *Green v. Hooks*, 798 F. App'x 411, 425 (11th Cir. 2020) (finding that "[w]e will not assume that because Green placed the letters in the internal prison mail system, the letters were delivered to and received by the prison officials prior to the assault. Consequently, those letters cannot serve as a basis for finding that Warden Hooks and Deputy Warden Brown were subjectively aware of any risk to Green"). Accordingly, Plaintiff cannot demonstrate that his unanswered letters to Defendants Reaves-Pham and McCrae establish subjective awareness by them of a risk to the Plaintiff's safety.

As to Defendant McCrae, Plaintiff presents no other factual allegations other than these letters that McCrae was on notice that Plaintiff could be harmed prior to the assaults. When Plaintiff met with Defendant McCrae immediately following the attack in April 2023 and advised McCrae of the danger he faced in the dorm, Defendant McCrae placed Plaintiff in "involuntary" protective custody, where it appears he remained until his transfer out of Riverbend. *See id*. at 7-10. Therefore, it is **RECOMMENDED** that Plaintiff's claim that Defendant McCrae was deliberately indifferent to a substantial risk of serious harm to the Plaintiff be **DISMISSED without prejudice**.

As for Defendant Warden Reaves-Pham, Plaintiff does offer other evidence that she may have been subjectively aware that Plaintiff's safety was compromised. Plaintiff includes with his complaint two grievances that were denied by Defendant Reaves-Pham in which he advised her that due to his sexuality, he was being harassed by other inmates, that inmates were extorting thousands of dollars from his family, that he had been badly assaulted by other inmates on two different occasions, and that he was in fear of other attacks by inmates in his dorm. ECF No. 1-1 at 5-7; *see also* ECF Nos. 1-4 and 1-7. Plaintiff further lists the names of six other inmates from his dorm that he witnessed being attacked by other inmates or personally knew were assaulted or extorted during the year Plaintiff was incarcerated at Riverbend. ECF No. 1-1 at 9-10. At this stage in the litigation, these allegations are sufficient to permit Plaintiff's Eighth Amendment failure-to-protect claim to proceed against Defendant Reaves-Pham.[1]

Similarly, Plaintiff alleges that he first personally notified Defendant West in July 2022 that he felt vulnerable to inmate attacks in open dorms due to his sexuality and a past assault. *Id*. at 3. Plaintiff states he met with Defendant West again on September 14, 2022, and repeated to him that Plaintiff feared being attacked by inmates in his dorm. *Id*.

---

[1] *See Diamond v. Owens*, 131 F. Supp. 3d 1346, 1377–78 (M.D. Ga. 2015) ("allegations suggesting the substantial risk was 'long-standing, pervasive, [or] well-documented' and the defendants 'had been exposed to information concerning the risk and thus must have known about it ... could be sufficient ... to find that [the defendants] had actual knowledge of the risk.' *Farmer*, 511 U.S. at 842–43. When analyzing subjective awareness, courts have considered the obviousness of the risk to inmate safety, the defendant's knowledge about the vulnerability of certain types of inmates to risk of harm, prison policies pertaining to such inmates, and their housing placements (citations omitted).")

at 5-6.   Plaintiff was robbed by gang members four days later and was physically assaulted by another set of inmates the day after he was robbed.   *Id*. at 6.   Plaintiff states that despite these attacks upon him by inmates in his dorm and his expressing to Defendant West his fear of future attacks, he remained in that dorm and was once again physically assaulted by inmates in April 2023.   *Id*. at 6-7.   Plaintiff states further that even when he was placed in protective custody in April 2023, Defendant West actively tried to remove him from segregation and return him to the open dorm, and that it was only Defendant McCrae's intervention that prevented Defendant West from removing Plaintiff from protective custody.   *Id*. at 8-9.   At this stage in the litigation, these allegations are sufficient to permit Plaintiff's Eighth Amendment failure-to-protect claim to proceed against Defendant West.

   B.   Claim for failure to investigate or discipline other inmates

   Plaintiff further appears to complain that his negative interactions with other inmates were not properly investigated and that his assailants were not charged or otherwise disciplined for their actions.   ECF No.1-1 at 5-6 and 8-9.   A plaintiff cannot support a § 1983 claim by alleging that a prison official failed to investigate wrongdoing by inmates or failed to take disciplinary action against another inmate.   Prisoners do not have a constitutional right to an investigation of any kind by government officials.   *See generally DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Stringer v. Doe*, 503 F.

App'x 888, 890-91 (11th Cir. 2013) (finding no substantive due process right to an internal investigation by law enforcement); *Vinyard v. Wilson,* 311 F.3d 1340, 1356 (11th Cir. 2002) (finding there is no constitutional right to an investigation of an excessive force claim); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (affirming dismissal claims against sheriff who failed to press criminal charges against plaintiff's assailant because "[e]ven if [the sheriff] were the person with authority to decide whether or not to pursue criminal charges ... "[t]he decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability"); *Mallory v. Hetzel*, 2016 WL 5030469, at *14 (M.D. Ala. 2016) (failing to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation because inmates do not enjoy a constitutional right to an investigation of any kind by government officials). Similarly, Plaintiff has no judicially cognizable interest in the prosecution or discipline of another inmate. *Woody v. Cronic***,** 401 F. App'x 509, 512 (11th Cir.2010) (citing *Leeke v. Timmerman***,** 454 U.S. 83, 85–86 (1982)); *Otero v. U.S. Attorney Gen.,* 832 F.2d 141, 141 (11th Cir. 1987) (finding that a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another).

Accordingly, Plaintiff's allegations surrounding any failure to investigate or discipline his assailants, even when viewed in the light most favorable to Plaintiff, do not describe any constitutional violation.   Therefore, it is **RECOMMENDED** that Plaintiff's claim that the Defendants failed to investigate or discipline his inmate assailants be **DISMISSED without prejudice**.

C.  Confinement in protective custody claims

*Plaintiff 's claim that confinement in protective custody generally violated his civil rights and/or the Fourteenth Amendment*

Plaintiff states that "[w]hile in involuntary P.C., Raby was restricted to only a few store items, only allowed a spending limit of $15.00 per week, withheld his property and hygiene items".   ECF No. 1-1 at 9.   Plaintiff complains that he was unable to shave and that inmates in general population have a $75 spending limit.   ECF No. 1-10; ECF No. 1-11; ECF No. 1-12.   Plaintiff complains that the limited access to property and the store while in protective custody are a "deprivation of rights secured by the Constitution of the United States".   ECF No. 1-1 at 9.   Plaintiff states that "there was other means of separation" in the prison and he wanted to be housed in "J-D".   ECF No. 1-10.

To the extent Plaintiff raises issues with his classification and housing in "involuntary protective custody", the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification or a specific section of a prison. *See* e.g., *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973)("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the States."); *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Olim v. Wakinekora*, 461 U.S. 238, 245 (1983); *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *McKune v. Lile,* 536 U.S. 24, 40 (2002). It is a long held axiom that "by virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted."

*McKune,* 536 U.S. at 40 (citing *Meachum,* 427 U.S. at 225).

To state a due process claim, a prisoner first "must have a liberty interest created by the United States Constitution or by a state." *Walker v. Florida Parole Com'n,* 299 Fed.Appx. 900, 901 (11th Cir. 2008) (citing *Monroe v. Thigpin,* 932 F.2d 1437, 1441 (11th Cir. 1991)). In general, a prisoner's housing based on the institution's custodial classification system does not create a liberty interest because "the decision where to house inmates is at the core of prison administrators' expertise." *McKune,* 536 U.S. at 39; *Morales v. Chertoff,* 212 F. App'x 888, 890 (11th Cir. 2006); *Sanchez v. McCray,* 349 F. App'x 479, 481-82 (11th Cir. 2009); *Meachum,* 427 U.S. at 224 (determining that an inmate had "no constitutionally protected liberty interest in being housed in a certain prison or a certain section within a prison."). Furthermore, Plaintiff's placement in administrative segregation does not alone give rise to a liberty interest, as "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin, v. Donald,* 165 Fed.Appx. 733, 738 (11th Cir. 2006) (quoting *Hewitt,* 459 U.S. at 468); *West v. Higgins,* 346 F. App'x 423, 426 (11th Cir.2009) (citing *McKune,* 536 U.S. at 39–40) (finding that "an inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before.").

In the context of inmate confinement, a liberty interest that would entitle a prisoner to some measure of due process may be implicated when the confinement causes a prisoner

to be held in excess of his court-imposed sentence or the confinement imposed a hardship that was atypical of ordinary prison life. *See Sandin*, 515 U.S. at 483-84; *Wallace v. Hamrick*, 229 Fed.Appx. 827, 830 (11th Cir. 2007); *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999).

Plaintiff does not allege that his confinement in protective custody caused him to be held in excess of his sentence.   Instead, he complains that his protective custody housing meant he could not spend more money at the store, he could not keep all his property, and he could not have access to all his hygiene items, including shaving supplies.   ECF No. 1-1 at 9; ECF No. 1-10; ECF No. 1-11; ECF No. 1-12.   The deprivation of in-prison benefits of which Plaintiff complains are not atypical of those discomforts normally associated with prison life. *See e.g., Walker v. Loman,* No. 2:06–cv–00896, 2006 WL 3327663, *2 (M.D.Ala.2006) ("[a]n inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life"); *Johnson v. Brown,* No. 05–0019, 2008 WL 490923 at *4–5 (S.D.Ala. Feb.19, 2008) ("Constitution does not grant an inmate a right in visitation, store, and telephone privileges.").

For the reasons set forth, the Defendants, as a matter of law, cannot be found to have violated Plaintiff's constitutional rights based on his placement within a protective custody prison unit that had limitations on commissary, personal property, and hygiene items such as razors because Plaintiff has not shown a constitutionally protected liberty interest in his confinement status.

*Plaintiff 's claim that confinement in protective custody violated the Eighth Amendment*

Plaintiff generally claims that his confinement in protective custody was "inhumane" and violated the Eighth Amendment.   ECF No. 1-12.   The cruel and unusual punishments standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832.   Generally speaking, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).   The Constitution does not mandate comfortable prisons. *Id.*   "Indeed routine discomfort is part of the penalty prisoners may pay for their offenses, and prisoners cannot expect the amenities, conveniences, and services of a good hotel."   *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004).

Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities."   *Id.* at 347.   To prevail on a conditions of confinement claim, a plaintiff must first show that the challenged conditions are objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834)). This standard is met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler*, 379 F.3d 1289, or if society otherwise "considers the

risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 37 (1993).

While Plaintiff's accommodations in the protective custody unit appear more restrictive than those allowed in less secure areas, none of the facts alleged describe conditions which would be considered sufficiently serious, inhumane, or inconsistent with "the minimal civilized measure of life's necessities."   *See e.g.*, *Hamm v. DeKalb County*, 774 F.2d at 1575 (prisoners need only be provided "reasonably adequate food"); *Turner v. Warden, GDCP*, 650 F. App'x 695, 701 (11th Cir. 2016)(prisoner failed to show that being left in a cell with no property and in a paper gown for ten days without food for a 24-hour period created an unreasonable risk of harm to his health or safety); *Overton v. Bazzetta*, 539 U.S. 126, 136–37, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (withdrawal of visitation privileges "is not a dramatic departure from accepted standards for conditions of confinement"); *Milton v. Ray*, 301 F. App'x 130, 133 (3d Cir.2008) (per curiam) (loss of commissary privileges for two months was not unconstitutional);

Accordingly, any claim that the conditions of Plaintiff's confinement were cruel and unusual punishment in violation of the Eighth Amendment is subject to dismissal.

*Plaintiff 's claim that his protective custody was in retaliation for his complaints and grievances*

Plaintiff further concludes that he was housed in protective custody in retaliation for his complaints and grievances.   ECF No. 1-10; ECF No. 1-11; ECF No. 1-12.   The core of a retaliation claim brought pursuant to 42 U.S.C. § 1983 is "that the prisoner is being

retaliated against for exercising his right to free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), *cert. denied*, 133 S. Ct. 445 (2012). To state a claim of retaliation, a prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).   A plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted).

Plaintiff has failed to sufficiently articulate any "affirmative evidence" that the decision to put Plaintiff into protective custody instead of Plaintiff's preferred housing was done specifically to retaliate against him for filing grievances.

*Plaintiff 's claim that protective custody violated his equal protection rights*

Plaintiff claims that being housed in protective custody violated his equal protection rights because prisoners in general population have better access to commissary, property, and hygiene items.   ECF No. 1-1 at 12; ECF No. 1-10; ECF No. 1-11. "The Supreme Court has recognized the Equal Protection Clause is implicated in 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir.) cert. denied, 549 U.S. 1020 (2006) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Griffin Indus. v. Irvin,* 496 F.3d 1189, 1202 (11th Cir.2007), quoting *Willowbrook.* 528 U.S. at 564

(finding that a "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'"). Because Plaintiff does not allege any fact suggesting that he has received disparate treatment because of a constitutionally protected class, Plaintiff's claim is construed as a "class of one" equal protection claim.

Whether a plaintiff brings his claim under a class of one theory or a traditional theory of unlawful discrimination, a plaintiff must allege facts to indicate that a defendant acted with the intent to discriminate against him. *See id.* at 1204–05; *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987). Moreover, where a plaintiff challenges the actions of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

Plaintiff presents no evidence of any such discriminatory intent and merely concludes his equal protection rights have been violated. Such conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient

to state a claim. *GJR Inv., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367–68 (11th Cir.1998) ((finding that "[b]are allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim"); *Coon v. Ga. Pac. Corp.,* 829 F.2d 1563, 1569 (11th Cir.1987); *Cladek v. Pagano*, No. 4:14cv187, 2014 WL 4693120, at *1 (N.D. Fla. Sept. 22, 2014) ("It is not enough for Plaintiff to make a conclusory assertion that other persons were treated better."). Accordingly, Plaintiff's claim that his limited access to commissary and property in protective custody violated his Equal Protection rights is subject to dismissal.

> *Plaintiff 's claim that his protective custody violated Department of Corrections policies*

Plaintiff complains that being housed in protective custody and the limited access to property and the store while in protective custody are in violation of Georgia Department of Corrections rules, policies, and procedures. ECF No. 1-1 at 9; ECF No. 1-10; ECF No. 1-1. "In a § 1983 action, a federal court considers whether a constitutional right has been infringed, not whether bureaucratic procedures have been violated." *Jones v. Schofield*, No. 1:08-CV-7 WLS, 2009 WL 902154, at 3 (M.D. Ga. Mar. 30, 2009) (*citing Rineholtz. v. Campbell* 64 F.Supp.2d 721, 731 (W.D.Tn.1999). "Prison regulations ... were never intended to confer rights on inmates or serve as a basis for constitutional claims." *Id*. "Instead, [state prison] regulations, as well as the Unified Code [of Corrections], were designed to provide guidance to prison officials in the administration of prisons." *Id*. "Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action." *Id*. Therefore, any claim

raised by the Plaintiff regarding these Defendants violating prison policies or procedures is subject to dismissal.

## III.   Conclusion

At this stage in the litigation, the Plaintiff has alleged facts sufficient to raise a colorable Eighth Amendment failure-to-protect claim against Defendants Reaves-Phams and Defendant West.   Those claims shall therefore proceed for further factual development.   It is **RECOMMENDED** that Plaintiff's Eighth Amendment failure-to-protect claim against Defendant McCrae be **DISMISSED without prejudice** and that Plaintiff's claims regarding any failure to investigate or prosecute his assailants also be **DISMISSED without prejudice**.   It is further **RECOMMENDED** that Plaintiff's claims regarding his confinement in protective custody be **DISMISSED without prejudice**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell., United States Chief District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this recommendation.   The parties may seek an extension of time to file objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection should be no longer than **TWENTY (20) PAGES** in length.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Warden Angela Reaves-Phams and Unit Manager West it is accordingly **ORDERED** that service be made on the Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action,

absent the filing of a motion therefor accompanied by a brief/memorandum of law citing

supporting authorities.   Dispositive motions should be filed at the earliest time possible,

but in any event no later than one hundred - twenty (120) days from when the discovery

period begins unless otherwise directed by the Court.

      **SO ORDERED AND RECOMMENDED**, this 21st day of December, 2023.


           s/ Charles H. Weigle_____

           Charles H. Weigle

           United States Magistrate Judge